JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. SA CV 19-0704-DOC (DFMx) | Date: January 6, 2020 |

Title: MORTGAGE APPLICATION TECHNOLOGIES, LLC V. MERIDIANLINK, INC.

PRESENT:

#### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman/Rolls Royce Paschal | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [33]**

Before the Court is Defendant Meridianlink's ("Defendant") Motion for Judgment on the Pleadings ("Motion") (Dkt. 33). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the moving papers and considered the parties' arguments, the Court **GRANTS** Defendant's Motion.

## I. Background

### A. Facts

The following allegations are taken from Plaintiff Mortgage Application Technology's ("MAT" or "Plaintiff") Complaint ("Compl.") (Dkt. 1). Plaintiff is a corporation based in Maryland. Compl. ¶ 4. MAT is the owner by assignment of U.S. Patent No. 8,548,902 (the "'902 Patent" or "Patent"). *Id.* ¶ 7. The Patent was issued on October 1, 2013. *Id.* ¶ 9. The '902 Patent generally relates to online loan origination

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 19-0704-DOC (DFMx) | Date: January 6, 2020 |
| | Page 2 |

services. *See* Compl., Ex. A, Abstract. Plaintiff argues that Defendant "has made, used, offered for sale, sold and/or imported into the United States systems and/or methods covered by the claims of the '902 patent." *Id*. ¶ 10.

### B. Procedural History

Plaintiff filed its Complaint on January 30, 2019 bringing one claim for patent infringement (Dkt. 1). On October 23, 2019, Defendant moved for judgment on the pleadings regarding invalidity of Plaintiff's patent. Plaintiff opposed ("Opp'n") (Dkt. 34) on November 15, 2019, and Defendant replied ("Reply") (Dkt. 35) on December 2, 2019.

## II. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and alteration omitted). Like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint. *See id*. Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply the "same standard." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of filing").

Section 101 of the Patent Act defines the subject matter eligible for patent protection as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Patent protection is thus broad, excluding only laws of nature, physical phenomena and abstract ideas. *Bilski v. Kappos*, 461 U.S. 593, 601 (2010). "Like other legal questions based on underlying facts," the legal question of patentable subject matter "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). It is further recognized that "[a]t some level, all inventions embody, use, reflect, rest upon, or apply the laws of nature, natural phenomena, or abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Accordingly, only those claims "that claim the building blocks of human ingenuity," and thus "risk disproportionately tying up the use of the underling ideas," are ineligible. *Id*.

Case 8:19-cv-00704-DOC-DFM Document 37 Filed 01/06/20 Page 2 of 9 Page ID #:678

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 19-0704-DOC (DFMx) | Date: January 6, 2020 |
| | Page 3 |

### III. Discussion

Defendant moves to dismiss Plaintiff's claim on the theory that the Patent is invalid under § 101. Mot. at 1. Specifically, Defendant argues the Patent is invalid under the abstract-idea exception to 35 U.S.C. § 101 after applying the two-part test from *Alice Corp*. *Id.* at 9. Plaintiff argues that their Patent "solved the most nagging problem in the industry at that time by constantly checking for new data and creating an updated PDF application that could be viewed by the customer at any time." Opp'n at 1. Overall, Plaintiff argues that Patent is not abstract because it includes "very specific features." *See* Opp'n at 20.

#### A. *Alice Corp*. Two-Part Test

In *Alice Corp.*, the Supreme Court articulated a two-part test to determine whether a patent is invalid under the abstract idea exception to 35 U.S.C. 101. First, a court should determine if the "claims at issue are directed to one of those patent-ineligible concepts," e.g. patents that claim laws of nature, natural phenomena, and abstract ideas. *Alice Corp*. 573 U.S. at 217. If the court answers the first question in the affirmative, it must then "consider the elements of each claim both individually and 'as an ordered combination' to determine . . . that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*. at 217–18.

##### 1. Step 1

Defendant argues that the '902 Patent is "directed to the abstract idea of information exchange in an online loan application process." Mot. at 9–10. Simply reciting the (1) receipt of a loan application, (2) comparison of data, and (3) population of a second document with the received information, is the abstract idea of automated information exchange. *Id*. at 10. Defendant contends that the purpose of the Patent is to "facilitate[] the flow of information throughout the mortgage lending process," which is akin to the abstract idea of implementing a process on a computer and over the internet. *Id*. at 11. Furthermore, Defendant argues that the Patent "is merely an automated version" of the online lending process which has been "historically engaged in by hand." *Id*. at 10–11. Finally, Defendant contends that reciting general steps that can be performed by a human and relying on a computer to complete the tasks is not inventive. *Id*. at 11.

Plaintiff counters that the Defendant has "ignor[ed] the specific technological implementation recited in the claims." Opp'n at 22. Specifically, Plaintiff argues that the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 19-0704-DOC (DFMx)                                          Date: January 6, 2020
                                                                                                                                       Page 4

Patent includes features that take the invention "out of the realm of simply receiving and processing a loan application." *Id*. at 20. The Plaintiff cites as an example claim 4, which includes elements such as "an application server," "an automatic decision engine," a "database server," and a "queue manager server" as elements that are "technologically complex" that do more than simply receive and process an application and instead "provide for the preservation of formatting of the original loan application." *Id*. at 20–21. Therefore, Plaintiff argues that the Patent "solves a problem specifically arising in the realm of computers and computer networks," because format preservation is not necessary with a paper-based system. *Id*. at 21.

In its Reply, Defendant argues that the claims of the '902 patent are directed to an abstract idea, and MAT's arguments focusing on the specification are unavailing. Reply at 8. First, Defendant argues that simply "using conventional computer technology does not save claims directed to an abstract subject matter." *Id*. at 10. Finally, Defendant argues that Plaintiff has conflated *Alice* Step One and Step Two by providing argument regarding inventiveness, which is irrelevant at Step One. *Id*. at 11. Instead, this Court should only look to the claim's character as a whole to determine whether it is directed to a patent ineligible subject matter. *Id*.

First, the Court notes that the it may properly consider Claims 1–7 as representative throughout the analysis. Indeed, where the "patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim," this Court may treat certain claims as representative. *Berkheimer v. HP Inc*., 881 F.3d 1360, 1365 (Fed. Cir. 2018). Here, Plaintiff fails to present any argument for *why* other claim limitations may be distinctive. *See* Opp'n at 24 (reciting simply that Plaintiff has failed to challenge all claims).

Next, the Court notes that it may properly entertain this motion without construing claims. "[I]f the parties raise a claim construction dispute at the Rule 12(c) stage, the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail, Ltd. v. ooVoo*, LLC, 934 F.3d 1373, 1379 (Fed. Cir. 2019). Here, Plaintiff does not raise a claim construction dispute with proposed constructions but instead simply lists terms that it contends "should be construed." Opp'n at 14.

The Court finds that the representative claims are "directed to" a patent-ineligible abstract idea. *Alice Corp*., 573 U.S. at 217. Namely, the claims are directed to the abstract idea of information exchange in an online loan application process which can easily be performed by a human. The representative claims of the '902 Patent state the following:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 19-0704-DOC (DFMx)                                       Date: January 6, 2020
                                                                                                                                                                                                    Page 5

1. A system for providing an online loan origination service, comprising:

   a. an application server having an Internet interface and configured to receive a loan application having loan application data, wherein the loan application data is in an Extensible Markup Language (XML) format, configured to automatically extract the loan application data, and hosting an automatic decision engine, wherein the automatic decision engine is configured to automatically process the loan application data and compare the loan application data to lender underwriting criteria to determine one or more compatible lenders;

   b. a database server coupled to the application server, comprising a database pre-loaded with a PDF generated application form, and configured to receive the extracted loan application data, further configured to automatically populate a binary Portable Document Format (PDF) form file with the extracted loan application data, and further configured to automatically store the binary PDF form file loan application populated with the extracted XML loan application data for cross-platform access and viewing; and

   c. a queue manager server coupled to the application server and the database server, wherein the queue manager server is configured to receive the loan application from the application server and wherein the database server is further configured to poll the queue manager server at specified periodic intervals and to receive the transfer of the loan application data from the queue manager server in response to a poll.

2. The system of claim 1, wherein the binary PDF form file populated with the extracted loan application data and the extracted XML loan application data are stored in a Structured Query Language (SQL) database residing on the database server.

3. The system of claim 1, wherein the application server is further configured to provide access to the binary PDF form file populated with the extracted loan application data stored in the database server to an authorized user via the Internet based on a receipt of credential information relating to the authorized user.

Case 8:19-cv-00704-DOC-DFM Document 371 Filed 01/06/20 Page 6 of 9 Page ID #:6892

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 19-0704-DOC (DFMx)                                        Date: January 6, 2020
                                                                                                        Page 6

4. The system of claim 1, further comprising a messaging server coupled to the application server and the database server, where in the messaging server is configured to generate an electronic message including information relating to a status of the loan application.

5. The system of claim 1, wherein the population, by the database server, of the binary PDF form file with the extracted loan application data includes Base 64 encoding.

6. The system of claim 1, wherein the population, by the database server, of the binary PDF form file with the extracted loan application data includes hexadecimal encoding.

7. The system of claim 1, wherein the population, by the database server, of the binary PDF form file with the extracted loan application data includes using unparsed entities.

Compl., Exh. A at 12.

      The claims recite steps that can all be performed in the human mind. Claim 1 describes receiving loan application data, extracting it, populating a PDF application with relevant data, and further storage and retrieval of the data. This is akin to what the Federal Circuit has found invalid under § 101 in the past. For example, in *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, the Federal Circuit found that proposed claims that "recite nothing more than the collection of information to generate a [] report . . . with the aid of well-known technology" was directed to an abstract idea. 703 F. App'x 986, 989 (Fed. Cir. 2017). In *Audatex*, the Circuit analyzed patents that related to systems for entering data associated with an insurance claim. *Id*. at 987. The Circuit found that the patents "neither directed to an improvement in computer functionality, nor provide[d] a specific improvement in the way computers operate. Rather, they embody an abstract idea that merely uses a computer and generic components as tools to collect these data and generate reports." *Id*. at 989.

      As in *Audatex*, the Patent describes collecting data and generating a report with the aid of well-known technology. Furthermore, the claims are not "directed to an improvement in computer functionality" but simply use a computer to perform data collection and routine manipulations. *Id*. Furthermore, the focus of the claims is not "an improvement in computers as tools," but instead assert an "independent abstract idea that use computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1354 (Fed. Cir. 2016). The fact that some claims recite language such as "messaging server,"

"application server," and "database server" does not change this analysis where the claims themselves do not speak to any *improvement* in technological functioning. Thus, the '902 Patent does not pass muster under *Alice* Step 1.

### 2. Step 2

Because the Court finds the "claims at issue are directed to" an abstract idea, *Alice Corp.*, 573 U.S. at 217, the Court "must then consider the elements of each claim both individually and 'as an ordered combination' to determine . . . that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*. at 217–18. Step 2 of "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). For reference, the representative claims and limitations are listed above.

Defendant argues that the representative claims do not add more because the "three servers identified in the claims . . . are all standard hardware." Mot. at 18. Further, the Patent specification confirms that "[t]he remaining pieces of software and processes [are] common in the art as well, for example, the specification notes that XML is a 'universal format', that PDF is 'the open standard for electronic document distribution', that the messages are sent via standard e-mail, and that '[t]here are numerous online loan origination sites . . . a majority of which implement various mortgage pre-qualification and origination software applications such as Calyx POINT.'" *Id*. at 18 (internal citations omitted).

Defendant argues claim 1 recites "generic computer elements and a series of generic computer components that merely restate their individual functions, and as a result, do not provide any inventive concept . . . ." *Id*. at 19. Indeed, claim 1 requires a system that "automatically" extracts loan application data, but "extraction of data is not inventive." *Id*. Next, Defendant argues that "hosting an automatic decision engine . . . configured to automatically process the loan application data" fails to provide something more because these processes were already well known at the time. *Id*. at 20. Third, Defendant argues that the element that requires populating a PDF with the extracted XML loan data is not inventive because the element "describe[es] the function[] of the abstract idea itself," namely information exchange. *Id*. at 21. Finally, claim 1 requires that a "queue manager" assist in receiving information over the internet in response to a request. However, Defendant argues this is simply describing a computer receiving a request for information and transmitting the information. *That* is not inventive. *Id*. at 23.

Defendant also argues claim 2 "relates to the concept of storing commonly known file types on a common type of computer server" and is not inventive. *Id*. Claim 3

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---:|
| Case No. SA CV 19-0704-DOC (DFMx) | Date: January 6, 2020 |
| | Page 8 |

"applies the known concept of credential verification to web based storage systems" by protecting a file with known security measures. *Id*. at 24. Claim 4 uses a computer to send a message over the internet regarding the status of a loan application. *Id*. However, this routine is common, well-known, and fails to add an inventive step. *Id*. Finally, claims 5, 6, and 7 merely apply commonly known storage techniques: Base64 encoding, hex encoding, and unparsed entities. *Id*. at 25. Defendant argues that the Patent itself acknowledges that these techniques are previously known ways to store binary data. *Id*. Therefore, these claims fail to offer an inventive step. *Id*.

Plaintiff responds, arguing that the claimed invention as a whole is inventive. First, Plaintiff argues that the automatic decision engine is inventive because it solved the problem "of creating a 'universal' protocol for dealing with the multiple, disparate, and non-compatible [software applications used in the loan application process]." Opp'n at 23. Second, Plaintiff argues that it claims extracting information from XML to PDF, which is inventive. *Id*. at 24. Finally, Plaintiff generally argues that Defendant is oversimplifying the claims and fails to "correctly assess" additional inventive elements, without detailing what additional elements provide the inventive step. *Id*.

In Reply, Defendants argue "[n]one of the inventive steps or unconventional features" Plaintiff brings forward are recited in the claims. Reply at 15. Therefore, the alleged inventive steps cannot offer the "something more" required under Step Two. *Id*. Indeed, MAT does not cite any portion of the Patent that describes how the system imports and exports the loan data. *Id*. at 15–16. Therefore, Plaintiff has merely claimed the "abstract concept of conversion," aggregation, storage, and information exchange. *Id*. Similarly MAT argues that it has created a "universal protocol" for dealing with multiple software applications. Again, however, MAT does not recite a method of accomplishing alleged compatibility. *Id*. at 18.

Here, the Court finds that Defendant has shown that the claims, both individually and in combination, do not add anything "significantly more" to the abstract concept itself. *Alice Corp*. 573 U.S. at 217–18. Plaintiff's arguments to the contrary are unavailing. The creation of a "universal protocol" does not save the Patent because the Patent does not recite any method of accomplishing superior compatibility. Instead, it simply recites a method of information exchange, but that *is* the abstract idea. Similarly, extracting and converting information from XML to PDF does not add an inventive step because the claims only recite that the conversion will occur and not how it will occur. Again, that *is* the abstract idea. In sum, the claims, individually and together, do not add anything to the abstract concept at issue here.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 19-0704-DOC (DFMx)                                  Date: January 6, 2020
                                                                                                                             Page 9

## IV. Disposition

For the reasons set forth above, the Court **GRANTS** Defendant's Motion. Because invalidity is a complete defense to infringement, granting leave to amend would be futile. Dismissal is granted **without leave to amend.** *Lipton v. Pathogenesis Corp*., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                                            Initials of Deputy Clerk: rrp
CIVIL-GEN

Case 8:19-cv-00704-DOC-DFM Document 87 Filed 01/06/20 Page 9 of 9 Page ID #:6895